'(January 24, 1898.)

## STATE v. HINES.

[51 Pac. 984.]

GRAND LARCENY—FELONIOUS INTENT—INSTRUCTIONS.—Upon the
trial of a defendant upon an information charging him with grand
larceny, an instruction in the following language, to wit: "The
jury are instructed, that if they believe from the evidence that
the defendant had no- felonious intent to steal the property de-
scribed, at the time he took it, the jury must acquit even if they
should believe that defendant subsequently conceived the intent
of appropriating the said animal," sufficiently leaves the question
of intent to the jury.

(Syllabus by the court.)

APPEAL from District Court, Ada County.

J. L. Niday, for Appellant.

The court erred in matters of law governing this case—in re-
fusing defendant's instructions as follows: "To find the de-
fendant guilty under the information, the jury must believe
from the evidence to a moral certainty and beyond a reasonable
doubt, that the defendant at the time he took the said mare
took her with the felonious intent to convert her permanently
to his own use." "If the jury believe from the evidence that
the defendant took the animal as alleged in the information
without the intent to permanently deprive the owner of the said
animal, then the jury must acquit." The foregoing instructions
embrace correct principles of law governing this case, are in the
exact language of the books, and should have been given. (3
Greenleaf on Evidence, 13th ed., sec. 150; *The Queen v. Hollo-
·way,* 2 Car. & K. 944-946; 2 Bishop's Criminal Law, 4th ed.,
secs. 862, 863, 869; 2 Archibald's Criminal Pleading and Prac-
tice, 1st ed., 389-391; *People v. Brown,* 105 Cal. 66, 38 Pac.
518; *State v. Ware,* 62 Mo. 601; *Johnson v. State,* 36 Tex. 377;
*Harris v. State,* 2 Tex. App. 102; *Banks v. State,* 7 Tex. App.
592.) When the evidence requires it, the court should instruct
the jury that if the defendant took the property with the intent,
at the time, of appropriating it temporarily, but not perma-
nently, they should acquit him. (*United States v. Durkee,* 25

Fed. Cas. 941; *Rex v. Krump,* 1 Car. & P. 373; 2 Bishop's Criminal Law, 4th ed., sec. 864; 2 American Criminal Law, 1st ed., sec. 1788; *Schultz v. State,* 30 Tex. App. 94, 16 S. W. 756.) If the taking, though wrongful, be not fraudulent, nor with the intent to wholly deprive the owner of the property, it is not larceny, but only a trespass. (*Rex. v. Phillips,* 2 East P. C. 662; *The Queen v. Addis,* 1 Cox C. C. 78; 2 Archibald's Criminal Practice and Pleading, 1st ed., 389, 390; *McCourt v. People,* 64 N. Y. 583; *Kay v. State,* 40 Tex. 31.) The words "feloniously steal," used in the statute, mean knowingly, without any claim or pretense of right, with intent wholly to deprive the owner of the goods. It is the intent which makes the taking a felony or a trespass only. (Kelley's Criminal Law Practice, sec. 601.) When instructions requested are pertinent and clear, they should be given, rather than to have others of a more general nature or in different language substituted by the court. (*State v. McCann,* 16 Wash. 249, 47 Pac. 443, 49 Pac. 216; *People v. Bonds,* 1 Nev. 35.) If refused because their substance had already been given, that fact should have been stated and noted on the instruction. (*People v. Lachanais,* 32 Cal. 433; *People v. Williams,* 17 Cal. 147; *State v. Ferguson,* 9 Nev. 118.)

R. E. McFarland, Attorney General, for the State.

When defendant denies the taking, how can he say that he intended to return the property? If it was not taken by him, he was not expected to return it; therefore, the instruction asked was not pertinent to the case and could not avail the respondent. In charging a jury, the court should give only such instructions as are pertinent to the evidence. (*People v. Ah Too,* 2 Idaho, 44, 3 Pac. 10; *People v. Hawes,* 98 Cal. 648, 33 Pac. 791.) An instruction which is not applicable to the facts that are in proof ought not to be given, although it is a correct statement of the law in the abstract. (*State v. Whittaker,* 35 Kan. 731, 12 Pac. 106; *Eli v. Talman,* 14 Wis. 28; *Hill v. Canfield,* 56 Pa. St. 454; *Howe S. M. Co. v. Layman,* 88 Ill. 39; *Adkins v. Nicholson,* 31 Mo. 488; *Chicago etc. R. R. Co. v. Dixon,* 88 Ill. 431.) The instruction of the court should be restricted to the

issues made by the pleadings and to the evidence. (*Nollen v. Wizner*, 11 Iowa, 120; *Iron Mt. Bank v. Murdock*, 62 Mo. 70; *Hall v. Strode*, 19 Neb. 658, 28 N. W. 312.)

HUSTON, J.—The defendant was convicted of the crime of grand larceny, and from such judgment of conviction takes this appeal.

The facts, as they appear from the record, are substantially as follows: The defendant and one Eugene Randolph and one George Cantwell were, on the twentieth day of December, 1896, confined in the county jail of Ada county, and on that day broke jail, and in their efforts to escape recapture they entered the barn or stable of one C. H. Jackson, at Orchard Farms, in said county, in the night-time and took therefrom the animal described in the information. They severally rode the animal for a distance of some twenty or twenty-five miles, reaching Snake river, which they desired to cross for the purpose of getting out of the state of Idaho. The defendants and his companions were unable either to cross the river or get the animals across. There were two animals (horses) taken by them from Orchard Farms, and, after reconnoitering the bank of the river for some time to find means of crossing, and being unable to do so, they turned the horses loose. The defendant and his two companions, Cantwell and Randolph, were shortly afterward recaptured. Prior to their recapture, one De Wire came upon them while they were in a cabin near Snake river, and recovered the mare in question. De Wire testifies that he found the mare loose near where these parties were stopping. The defendant told De Wire that he had nothing to do with the taking of the mare; that he "knew nothing about it." Randolph, who was informed against jointly with the defendant and Cantwell, testified that the defendant, one Williams (who escaped from the jail at the same time with defendant, Cantwell, and Randolph), and himself went into the barn at Orchard Farms together; that he (Randolph) put the bridle on the mare, and defendant put the saddle on her; that both defendant and Williams rode her for some distance; that when they arrived at Snake river they first tied the horses at or near the cabin; that afterward defendant untied and turned them loose. The defendant, testifying in

his own behalf, denied that he had anything to do with the taking of the mare from the barn at Orchard Farms, denied that he ever rode the mare, denied that he unsaddled or turned her loose; yet he says, "We took the saddles off the horses at the cabin, and turned them loose." The testimony of the defendant is .so contradictory and inconsistent as to make it entirely uncreditable.· The contention of counsel for the appellant is directed to what is claimed to be error by the district court in refusing to give certain instructions asked by defendant and in modifying certain other instructions asked by defendant.

The first and fourth instructions, the refusal to give which is urged ·as error, were as follows: 1. "To find the defendant guilty under the information, the jury must believe from the evidence, to a moral certainty, and beyond a reasonable doubt, that the defendant, at the time he took the said mare, took her with the felonious intent to convert her permanently to his own use." 4. "If the jury believe from the evidence that the defendant took the animal as alleged in the information, without the intent to permanently deprive the owner of the said animal, then the jury must acquit." The contention of counsel for the appellant is that, in refusing to give the foregoing instructions, the court took the question of intent entirely from the jury. Now, the defendant swears that he had nothing whatever to do with the taking of the stolen horse, and yet his counsel insists upon the court giving an instruction based upon evidence which would convict the defendant of perjury. Put plainly, the contention of counsel is this: The court should have instructed the jury, if they believed from the evidence that the defendant had sworn falsely, and that he did take the horse, then the jury should further find that he took the same with intent to "permanently" deprive the owner thereof. But the court did give the following instruction: "The jury are instructed that, if they believe from the evidence that the defendant had no felonious intent to steal the property described at the time· he took it, the jury must acquit, even if they should believe that defendant subsequently conceived the intent of appropriating the said animal." This instruction left the whole question of intent to the jury, and on the whole was too liberal as to an intent con-

ceived after the act of taking. We have examined many—not all—of the authorities cited by counsel for the appellant, and, while it must be conceded that some of these authorities would seem to, in a measure, sustain counsel's contention, yet it is also true that those decisions are based entirely upon the facts in each case. A careful examination of the record in this case shows no error affecting the substantial rights of the defendant. The judgment of the district court is affirmed.

Sullivan, C. J., and Quarles, J., concur.