## Keel v. New York Life Ins. Co.

No. 611, Ind. T.     Opinion Filed Feb. 18, 1908.

(94 Pac. 177.)

1.   ᴵAPPEAL—Bills of Exceptions—Failure to Show Grounds of Objection to Testimony. Where the bill of exceptions fails to show the grounds of an objection to testimony, this court, on appeal, cannot review the ruling thereon.

2.   EVIDENCE—Documentary—Res Gestae. Letters forming part of the transaction are admissible in evidence as part of the res gestae.

3.   TRIAL—Directing Verdict—Variance. When the plaintiff, the widow of the insured, introduces evidence tending to show prima facie that the insured made application for a $3,000 "Standard Life Insurance Policy," and that such a policy was issued and delivered to the insured, and rests her case upon this prima facie showing; and then the defendant introduces conclusive proof that the policy actually issued was not a standard policy, but what is known as a "Substandard Policy," differing in many important particulars from that called for by the application—it is not error for the court below to direct the jury to return a verdict for the defendant.

(Syllabus by the Court.)  ·

*Appeal from, the United States Court for the Southern District of the Indian Territory, at Tishomingo; before Hosea Townsend, Judge.*

Action by Mosley Keel against the New York Life Insurance Company. Judgment for defendant, and plaintiff appeals. Affirmed.

*Cornelius Hardy,* for appellant.

*James H. McIntosh,· Treadwell & Lucas,* and *Locke & Locke,* for appellee.

Kane, J.   This was an action by Mosley Keel, widow of Lewis Keel, deceased, against the New York Life Insurance Com-

pany, in the United States Court for the Southern District of the Indian Territory, at Tishomingo, to recover the sum of $3,000, alleged to be due the appellant, as beneficiary, on a life insurance policy issued to her husband by the New York Life Insurance Company. At the trial of the cause the appellant, not being in possession of the application, or the policy alleged to have been issued thereon, introduced secondary evidence tending to establish her right to recover on the $3,000 standard policy. After she had thus made a *prima facie* case and rested, the appellee offered evidence, which, if properly admitted, proved conclusively that, upon receipt of Mr. Keel's application for a standard life insurance policy, the insurance company, on account of the applicant's unsatisfactory family history, refused to issue the standard policy applied for, but in lieu thereof issued what is known to the insurance world as a "Substandard Policy." Under the standard policy the beneficiary would be entitled to the full face value of the policy, to wit, the sum of $3,000, while under the substandard policy, in case of death before the 10th day of October, 1914, the amount payable would be $1,064.85, and, in addition thereto, a sum equal to the total premiums paid to date of death; and in case of death after the above date the sum payable would be $3,000. The premium is the same for both forms of policy.

To support its contention appellee offered in evidence the following letter:

"Home Office, New York, Nov. 27th, 1901.
"F. R. Muffitt, Kansas City Branch.
"Re Policy No. 2,089,144—Keel.
"Dear Sir: I am informed that upon consideration of the application for insurance on the life of Mr. Lewis Keel, which was submitted by you, the risk was found not quite up to the Company's standard on the plan applied for, but might safely be assumed on the Company's Adjustable Accumulation Plan with Lien. In order to meet the desire for insurance as far as possible, the above policy has been written on that plan, and forwarded to

your branch office, to be submitted with full explanations, for acceptance if found satisfactory. An explanation of the policy will show that it has the advantages of our regular Accumulation Policy in the way of incontestability, guaranteed loans, grace in payment of premiums, non-forfeiture in event of non-payment of premium, and number of accumulation benefits. The premium is the same, but in case of death before the 10th day of October, 1914, the amount payable will be $1,064.85, and in addition thereto a sum equal to the total premiums that have been paid to date of death (taken at the annual tabular rate.) In case of death after that date the entire sum payable will be $3,000. Under the circumstances we believe this a very desirable policy for the insured, and recommend its acceptance.

"Yours truly, Geo. W. Perkins,<br>"Second Vice President.

"P. S. Our action in this case is due to the applicant's unsatifactory family history."

This letter was obtained on the trial from Mr. Hardy, counsel for the appellant, who found it in the vault of the Bank of the Chickasaw Nation in an envelope marked "Lewis Keel." Muffitt, the insurance agent who took the application, had received it, with the policy issued, from the Kansas City branch office of the appellee, and communicated the substance of it to Keel. The following is the stenographic report of what took place when the letter was offered in evidence:

"Mr. Locke: We now offer in evidence a letter received from Mr. Hardy and verified by Mr. Muffitt. Mr. Hardy: To which the plaintiff objects. The Court: Let it be introduced. (To which the plaintiff excepted.)"

The bill of exceptions contained nothing further relative to this ruling, save that it shows that in her motion for a new trial the plaintiff claimed that the court erred in permitting the defendant to introduce the letter "without having first shown that said letter of instruction has been communicated to the said Lewis Keel, the insured." This is the first material error complained of by the appellant, and goes directly to the merits of the case.

The principal question being whether the policy issued is the one sued on and the one applied for by Keel.

It is contended by counsel for the appellee that it is not error to admit evidence over a general objection which specifies no ground for rejecting it. This contention seems to be well supported by the authorities. *Camden v. Doremus*, 3 How. (U. S.) 515, 11 L. Ed. 705; *Toplitz v. Hedden*, 146 U. S. 252, 13 Sup. Ct. 70, 36 L. Ed. 961; *Hutchinson v. Whitmore*, 95 Mich. 592, 55 N. W. 438; *Harris v. Amoskeag Lumber Co.*, 97 Ga. 465, 25 S. E. 519; *O'Hagan v. Clinesmith*, 24 Iowa, 249; *Gilbert v. Thompson*, 14 Minn. 444 (Gil. 414); *Rhea v Crunk*, 12 Ind. App. 23, 39 N. E. 879; *De Garcia v. Galvan*, 55 Tex. 53; *Turner v. City of Newburg*, 109 N. Y. 301, 16 N. E. 344, 4 Am. St. Rep. 453; *Rush v. French*, 1 Ariz. 99, 25 Pac. 816; *Vaughan v. State*, 58 Ark. 353, 24 S. W. 885; 3 Jones on Evidence, § 896; 1 Wigmore on Evidence, § 18.

The Supreme Court of Arkansas, whose Code of Civil Procedure was extended over the Indian Territory, holds that:

"Where the bill of exceptions fails to show the grounds of an objection to testimony, this court, on appeal, cannot review the ruling thereof." (*Keizer v. Seabrook*, 25 Ark. 334.)

The "appellant should have been ingenuous and fair to the court, 'laying' his finger' upon the particular point in the court below which he is insisting upon here." (*Vaughan v. State, supra.*)

As this case arose under the laws of the Indian Territory, thus taken from the state of Arkansas, we are constrained to follow the practice and procedure followed by the courts under whose laws the cause of action arose.

But waiving the technical question of the form of the objection to the evidence, it seems clear that the letter was admissible as part of the *res gestae*. Letters forming part of the transaction are admissible in evidence as part of the *res gestae*. *Wilkes*

*v. Dinsman,* 7 How. (U. S.) 89, 12 L. Ed. 618; *New England Marine Ins. Co. v. De Wolf,* 8 Pick. (Mass.) 56.

One of the provisions of the application for insurance was that only the officers of the home office of the company have authority to determine whether or not a policy should issue. The application containing this provision was introduced in evidence. It was admitted that this application is good evidence; then certainly it was not error to admit the letter in response to it. This being our view of the law, it is not necessary to examine further into the case. The letter introduced in evidence clearly shows that the policy applied for was never issued by the insurance company, but that, in lieu thereof, a policy differing in many particulars from the one called for in the application was issued.

Counsel for appellant did not sue upon the policy issued, nor does he contend in his brief that he would be entitled to recover thereon in this action. He does not dispute the entire authenticity of the letter, nor of is conclusive nature as evidence, provided it was properly admitted. Nor did he seek to amend his pleadings to conform to the proof with a view to recover on the substandard policy. We are of the opinion that it being conclusively made to appear that the policy sued upon was not issued by the company on the application of the insured it was not error for the court to instruct the jury to return a verdict for the defendant.

When the plaintiff, the widow of the insured, introduces evidence tending to show *prima facie* that the insured made application for a $3,000 standard life insurance policy, and that such a policy was issued and delivered to the insured, and rests her case upon this *prima facie* showing, and the defendant then introduces conclusive proof that the policy actually issued was not a standard policy, but what is known as a "substandard policy," differing in many important particulars from that called for by the application, it is not error for the court to direct the jury to return a verdict for the defendant.

We do not want to be understood as passing upon the right of the appellant to recover upon the substandard policy, in an action brought for that purpose, as that question is not before the court at this time. We hold only that the letter introduced in evidence was properly admitted; that as it shows conclusively that the policy sued on in this action was never issued by the appellee the appellant is not entitled to recover thereon. The judgment of the lower court is therefore affirmed.

All the Justices concur.