**207 P.2d 540**

**STATE v. SHAW.**

**No. 7497.**

Supreme Court of Idaho.

June 21, 1949.

Paul C. Keeton, Lewiston, for appellant.

Robert E. Smylie, Atty. Gen., John R. Smead, Asst. Atty. Gen., both of Boise, Earle W. Morgan, Pros. Atty., Lewiston, for respondent.

**HOLDEN, Chief Justice.**

Ray Shaw was charged with and convicted of the crime of involuntary manslaughter and he appeals.

Appellant contends the trial court erred in refusing to grant his motion to dismiss the action "on the ground that a defendant whose trial has not been postponed upon his application and who is not brought to trial at the next term of court in which the indictment is triable after it is found has a right to have the action dismissed."

The record shows a criminal complaint was filed in the justice court of the first precinct of Nez Perce county December 31, 1947, charging appellant with the crime of involuntary manslaughter; that appellant was held to answer said charge in the District Court of the Tenth Judicial District of the State of Idaho in and for Nez Perce county; that on the same day an information was filed in said district court charging appellant with the commission of the crime of involuntary manslaughter; that appellant's trial began June 16, 1948, and that on the 18th day of June, 1948, the verdict of the jury was filed finding appellant guilty of manslaughter as charged in the information.

In support of his contention the trial court erred in refusing to dismiss the action, appellant cites and relies upon article 1, section 18, of the constitution of the state of Idaho; sec. 19-3501, Idaho Code; In re Shirley Jay, 10 Idaho 540, 79 P. 202, and In re Rash, 64 Idaho 521, 134 P.2d 420.

Section 18, supra, provides: "[Sec. 18] Justice to be freely and speedily administered.—Courts of justice shall be open to every person, and a speedy remedy afforded for every injury of person, property or character, and right and justice shall be ad-

ministered without sale, denial, delay, or prejudice."

And sec. 19-3501, Idaho Code, provides:

"[Sec. 19-3501] When action may be dismissed.—The court, unless good cause to the contrary is shown, must order the prosecution or indictment to be dismissed, in the following cases:

"1. When a person has been held to answer for an offense, if an indictment is not found against him at the next term of the court at which he is held to answer.

"2. If a defendant, whose trial has not been postponed upon his application, is not brought to trial at the next term of the court in which the indictment is triable, after it is found."

In Re Shirley Jay, supra, relied upon by appellant, it appears it was admitted that no indictment was found or information filed at the next term of court at which Jay was held to answer. The reasons given for failure to comply with the above quoted first subdivision, in substance, were loss of papers and press of business in the office of the county attorney. This court, of course, held the showing was not sufficient and ordered that Jay be discharged. But there is such a substantial difference in the facts on the question of "good cause", in the case at bar, and the facts on the same question in Re Shirley Jay, supra, that the Jay case cannot be said to be in point on that question.

The second subdivision of sec. 19-3501, supra, was before this court for consideration in Re Rash, supra. In that case it appears an information charging bigamy was filed against Rash November 24, 1941; that thereafter, at a trial upon said charge, in December, 1941, the jury disagreed. January 5, 1942, the case was continued at defendant's request because of the absence of his, and inability to secure, necessary witnesses; and that September 19, 1942, the case was continued at the request of the prosecution, concerning which the following statement was made by the trial court: "That this court takes judicial notice of the fact that the United States is at war and that it would be virtually impossible to obtain witnesses in said cause at the present time who must come from a considerable distance, as they are employed in defense projects where their presence is absolutely essential; and that because of the conditions existing in Latah County, Idaho, due to the shortage of labor, it would be virtually impossible to obtain a jury at the present time without working a great hardship upon everyone that would be called to the jury duty at this time and because it does not appear that the defendant would in any [way] be prejudiced by said continuance."

It further appears that thereafter the trial court denied Rash's motion to dismiss made September 21, 1942. It also appears Rash sought dismissal of the action by an original application filed in this court for

habeas corpus contending he should have been tried either at the term April 6, 1942, or September 19, 1942. In passing on the Rash contention, this court said [64 Idaho 521, 134 P.2d 421]: "The proviso in section 19-3401 [now sec. 19-3501, Idaho Code] that 'The court, unless good cause to the contrary is shown, must order the prosecution or indictment to be dismissed', vests discretion in the court both in the initial determination of whether good cause is shown *and in this court* on the application for habeas corpus [citing cases]." (Emphasis added.)

Continuing this court further said: "The reasons given by the learned trial judge for continuing the cause are, however, not so lacking in the elements of 'good' cause under the statute, though of doubtful justification [citing cases], as to demand the petitioner's discharge, especially since his incarceration is only nominal [citing a Washington case]. He is, however, entitled to be tried."

Concluding the court said: "Petitioner, therefore, is not discharged from custody but remanded with directions to the trial court to impanel an open or special venire, if necessary, and put the defendant to trial upon the charge in the information, within the next thirty days compliant with section 7-109, I.C.A. [now sec. 10-109, Idaho Code]."

In so far as section 13 of article 1, of the California constitution, and section 18 of article 1 of our constitution, guaranteeing a speedy trial, are concerned, they are substantially alike and it may be further stated that in so far as the right of a defendant to have a prosecution against him dismissed for failure to bring the same to trial, the provisions of the California statute, Penal Code, sec. 1382, and sec. 19-3501, supra, are also substantially alike.

In People v. Scott, 74 Cal.App.2d 782, 169 P.2d 970, the California court had before it for consideration and determination the question as to whether the right to a speedy trial guaranteed by sec. 13, supra, of the California constitution, and the provisions of subd. 2 of sec. 1382, of the Penal Code of that state, could be waived, in which case it held an application for relief must be made in the first instance, in the court where the prosecution is pending, and if the application is not therein made before the trial is begun, the right is waived.

Here, the record discloses that at the threshold of the trial the court inquired if there were any preliminary motions to which the prosecuting attorney replied.

"There are your Honor. The defense has *one* and the State has one. Mr. Keeton, the attorney for the defendant has suggested that we hold up *his*, subject to the Court's approval, until after the jury is empaneled and sworn and if that could be adopted then we would not be arguing the matters in front of the prospective jurors, if that is agreeable to the Court.

"The Court: Very well.

"Mr. Morgan: And I will agree that there is no waiver of their rights by their doing that. Now if it can be agreed there is no waiver of my rights. I have one that I can present at the same time if (Mr. Morgan continued) agreeable with counsel.

"Mr. Keeton: It is agreeable." (Emphasis added.)

The prosecutor then moved that the names of Guy Swain and Mrs. Delmar E. Johnson be indorsed on the information as witnesses for the state, and at the same time and as a part of the same motion also moved that the name of the sheriff be stricken from the information. The court granted the motion to indorse the names of Swain and Johnson on the information and to strike the name of the sheriff. Appellant then moved that all of the witnesses be excluded from the courtroom. The court stated the motion to exclude would be taken up after the selection of the jury. Counsel for appellant replied:

"Mr. Keeton: Very well. I just wanted to advise the Court I was going to so move."

Whereupon, the selection of the jury began. Later the clerk announced the panel was exhausted. The court then directed the sheriff (who by that time had been subpoenaed by appellant) to summon fourteen electors to serve as jurors. The electors were summoned and the selection of the jury proceeded. When the selection of the jury was completed the trial court directed the jury to stand and be sworn. Thereupon appellant moved to quash the special venire "on the ground that they were summoned by the sheriff who is a witness in this cause." The motion was denied and the jury sworn and the information read to the jury by the clerk and the plea of appellant stated. Appellant then renewed his motion to exclude the witnesses and the court granted the motion. Following which the record shows:

"Mr. Keeton: If the Court please, I would like to argue my motion to suppress at this time. I would rather not have the opening statement in the case until I have that or until we go ahead.

"The Court: Well, we will have to take the time sometime to hear that so we might as well take it now."

Thereupon the motion to suppress was argued by counsel for appellant, at the conclusion of which the record shows: "The Court: Well if there is nothing further then the Court will reserve ruling on the motion until we convene in the morning."

The next morning the court denied the motion to suppress and then counsel for appellant moved, under subd. 2 of section 19-3401, I.C.A. (now sec. 19-3501, I.C.), that the action be dismissed, which the trial court denied.

It will have been noted that at the beginning of the trial the court inquired if there were any preliminary motions and that the prosecuting attorney replied that "The defense has *one* and the state has *one* [emphasis added]." And it will be fur-

ther noted the defense thereafter made four motions, to-wit:

1. Motions to exclude witnesses.

2. Motion to quash the panel.

3. Motion to suppress.

4. Motion, under sec. 19-3401, I.C.A. (now sec. 19-3501, I.C.), to dismiss the action.

■ Appellant contends "the parties agreed with the approval of the Court that the defendant should have until the time the jury was sworn to make his preliminary motion," referring to the motion to dismiss the action. The record does not support that contention, in this: That appellant gave no hint as to what particular motion he intended to make later; that instead of later making but one motion, he made four; that the prosecutor could not have agreed appellant could, without waiving his right to do so, wait until after the jury was impaneled and sworn, to move to dismiss the action, because the prosecutor did not know which one of the four motions counsel for appellant had in mind; and, therefore, under all the above stated facts and circumstances, there could not have been a meeting of the minds; therefore, no agreement could have resulted.

■ It is next contended "The Court erred in issuing a special venire for jurymen and allowing the same to be served by W. W. Hays as sheriff of Nez Perce County, or by his deputies, he having been endorsed on the Information as a witness and thereafter stricken by the Prosecuting Attorney only for the purpose of summoning said special venire".

Sec. 19-2010, I.C., provides: [Sec. 19-2010] "Challenge for bias of officers.—When the panel is formed, or in part formed, from persons whose names are not drawn as jurors, a challenge may be taken to the panel on account of any bias of the officer who summoned them, which would be good ground of challenge to a juror. Such challenge must be made in the same form, and determined in the same manner, as if made to a juror."

And section 19-2006, I.C., provides: [Sec. 19-2006] "Challenge to panel—When and how taken.—A challenge to the panel must be taken before a juror is sworn, and *must be in writing,* and must plainly and distinctly state the facts constituting the ground of challenge." (Emphasis added.)

In the case at bar, the challenge was not made in writing, as required by the last above quoted section.

In State v. Scoble, 28 Idaho 721, 723, 155 P. 969, 970, this court held: "If the defendant in a criminal case desires to take advantage of his right to interpose a challenge to the panel, he must do so in the manner provided by the statute. Sec. 7820, Rev. Codes [now sec. 19-2006, I.C.] provides that a challenge to the panel must be taken before a juror is sworn, and *must be in writing* [emphasis added]."

See also State v. Conner, 59 Idaho 695, 701, 89 P.2d 197.

Furthermore, the record shows before the sheriff served the special venire his name had been stricken from the information, and that he was not called as a witness and did not testify for either respondent or appellant, nor did any deputy sheriff testify.

■ Appellant complains "The evidence appearing in the record is insufficient to sustain the verdict for the reason that there is no substantial competent evidence to support the material allegations of the Information"; and also that "The Court erred in imposing on the defendant the judgment and sentence which was imposed for the reason that the evidence is insufficient to justify a conviction." It will be observed appellant does not point out wherein the evidence is insufficient to support the verdict. Instead, he states "there is no substantial competent evidence to support the material allegations of the Information", which, of course, does not comply with the real intent of the rule that an assignment of insufficiency of the evidence must specify the particulars in which it is contended the evidence is insufficient. Sec. 19-2803, I.C.; State v. Becker, 35 Idaho 568, 207 P. 429; State v. Moodie, 35 Idaho 574, 207 P. 1073; State v. Poulos, 36 Idaho 453, 212 P. 120; State v. Sayko, 37 Idaho 430, 216 P. 1036; State v. Johnson, 39 Idaho 440, 227 P. 1052.

■ Much of the evidence in this case is circumstantial—consisting of many facts and circumstances—hence, is very voluminous. A review, therefore, would unduly extend this opinion and would serve no useful purpose. We will, however, point out some of the more important facts and circumstances supporting the verdict.

It may be stated at the outset there is no controversy as to where and when Kenneth Johnson was struck and killed. The evidence shows the offense for which appellant was tried and convicted was committed at about one o'clock of the morning of Thanksgiving Day 1947; that appellant had been drinking beer from about nine o'clock the night before; that he had visited first one beer parlor and then another, drinking beer, right up to a few minutes before Johnson was killed; that at about 12:30 o'clock Thanksgiving Day morning appellant visited a beer parlor for a second time where he "stepped aside or staggered aside, whatever you may call it"; that on that Thanksgiving morning appellant was driving a motor vehicle up what is known as the 21st Street Grade in Lewiston—a street leading up a canyon—at a time when Kenneth Johnson was walking up on the lefthand side of the street; that appellant so drove his car that it went over and across the lefthand shoulder of 21st Street and down into a gully about ten feet deep; that Kenneth Johnson was found in a dying condition above and about eight feet from the Shaw car; that appellant was

found in his car, which was rather badly wrecked; that there was an odor of beer on appellant's breath and a strong odor of alcohol in his car; that Johnson and appellant were placed in the same ambulance and taken to a hospital and that Johnson died a few minutes thereafter.

There is no evidence that any other car went off the 21st Street Grade at or about one o'clock that Thanksgiving morning. Therefore, who, other than appellant, by any possibility, could have struck and killed Kenneth Johnson as he was walking up the 21st Street canyon grade? As above pointed out, appellant was found at the scene of the crime, injured, and his car was there, wrecked—mute but convincing evidence of the tragedy.

We direct attention to State v. Glanzman, 69 Idaho ——, 202 P.2d 407, 408. In that case Glanzman was also charged with and convicted of the crime of driving a motor vehicle while under the influence of intoxicating liquor. This court quoted with approval the holding in Grooms v. State, 77 Okl.Cr. 448, 142 P.2d 862, where the following instruction was given:

" 'To constitute this crime, it is not necessary that the driver of the motor vehicle be shown to have been in any particular degree or state of intoxication, but only that such driver at the time charged had consumed intoxicating liquor to such an extent as to influence or *affect* his driving of the motor vehicle.'

" 'Whether or not the driver of the motor vehicle was under the influence of intoxicating liquor is a question of fact for the jury to determine under the facts and circumstances disclosed by the evidence.' " (Emphasis added.)

And in State v. Glanzman, supra, this court also quoted with approval the following from Hasten v. State, 35 Ariz. 427, 280 P. 670:

"It is a truism that a person who is even to the slightest extent 'under the influence of liquor,' in the common and well-understood acceptation of the term, is to some degree at least less able, either mentally or physically or both, to exercise the clear judgment and steady hand necessary to handle as powerful and dangerous a mechanism as a modern automobile with safety to himself and the public. With the increasing number and speed of automobiles on our highways, and the appalling number of accidents resulting therefrom, it is not strange that the lawmaking power determined that any person, who of his own free will *voluntarily lessened* in the *slightest degree* his ability to handle such vehicles by the use of intoxicating liquor, should, while in such condition, be debarred from their use. The Legislature has placed no limitation on the extent of the influence required, nor can we add to their language.

"Nor will it follow, as appellant seems to fear, that every man who has taken a drink falls within the ban of the statute. If that drink does not cause him to be 'influenced'

in the ordinary and well-understood meaning of the term, he is not affected by the law. If he is so influenced, he must bear the consequences of his voluntary act by refraining from driving an automobile while that influence lasts [emphasis added]."

Furthermore, and finally, the burden of showing error on appeal after conviction is on defendant. State v. Mundell, 66 Idaho 297, 315, 158 P.2d 818.

The judgment of conviction is affirmed.

GIVENS and TAYLOR, JJ., and FEATHERSTONE and SUTPHEN, District Judges, concur.